# EXHIBIT U

Caution
As of: August 17, 2017 6:42 PM Z

# Martin v. Ohio Turnpike Com.

United States Court of Appeals for the Sixth Circuit

May 8, 1992, Argued ; July 7, 1992, Decided ; July 7, 1992, Filed

Nos. 91-3807, 91-3838

**Reporter**
968 F.2d 606 *; 1992 U.S. App. LEXIS 15356 **; 122 Lab. Cas. (CCH) P35,684; 30 Wage & Hour Cas. (BNA) 1601

MARSHALL MARTIN, JR., On Behalf of Himself and all other Employees of the Ohio Turnpike Commission similarly situated, et al., Plaintiffs-Appellants, v. OHIO TURNPIKE COMMISSION, Defendant-Appellee.

**Subsequent History:** Rehearing En Banc Denied August 20, 1992, Reported at 1992 U.S. App. LEXIS 19624.

**Prior History:** [**1] ON APPEAL from the United States District Court for the Northern District of Ohio. District No. 87-01548. Ann Aldrich, District Judge.

**Disposition:** Affirmed

**Counsel:** For Plaintiff - Appellant MARSHALL MARTIN, JR., On Behalf of Himself and all other Employees of the Ohio Turnpike Commission similarly situated, et al.: Michael J. Spetrino, David H. Schaffer, ARGUED, BRIEFED, 216-375-4500, Joondeph & Schaffer, 50 S. Main Street, Suite 700, Akron Centre Plaza, Akron, OH 44308-1881.

For Defendant - Appellee OHIO TURNPIKE COMMISSION: Maria J. Codinach, BRIEFED, 216-687-8537, Ronald J. James, ARGUED, 216-479-8500, Kimberly A. Fatica, 216-687-8500, Anne C. Morgan, 216-687-8500, Squire, Sanders & Dempsey, 127 Public Square, Suite 4900, Society Center, Cleveland, OH 44114-1304.

**Judges:** Before: GUY and BOGGS, Circuit Judges; and RONEY, Senior Circuit Judge [*].

**Opinion by:** PER CURIAM

---

[*] Honorable Paul H. Roney, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

## Opinion

[*607] PER CURIAM. The plaintiffs, a group of highway maintenance workers, brought this action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, to obtain overtime compensation for time that they were "on call" [**2] while away from the worksite. The district court granted summary judgment to the defendant employer. We affirm.

I.

The plaintiffs are 125 highway maintenance workers employed by the defendant, the Ohio Turnpike Commission (Turnpike). The Turnpike employs approximately 300 maintenance workers, each assigned to one of eight maintenance buildings situated along the highway. Each employee works an eight-hour shift five days a week. The shift starts at 8:00 a.m during the winter and 7:00 a.m. during the summer.

The Turnpike requires the employees to work overtime as needed and pays one and one-half times the regular hourly rate for overtime work. The Turnpike schedules much of the overtime work in advance. Unscheduled overtime work becomes necessary when an emergency, such as an accident or severe weather, occurs after normal working hours.

Before 1986, employees could exempt themselves from unscheduled overtime work. Under a new collective bargaining agreement that went into effect in 1986, the Turnpike required employees to perform unscheduled overtime work when called. Employees could excuse themselves from unscheduled overtime only by taking a vacation day or by obtaining Permission [**3] from the foreman in advance. The parties disagree as to whether the foremen readily granted such permission.

The Turnpike developed a procedure for summoning workers for emergency overtime work. The Turnpike divided workers into two crews. One crew would be "on" and the other crew would be "off" at all times. [1] When an emergency occurred, the foreman would determine how many workers were needed. The custodian would then call employees from the "on" crew, beginning with the employee who had worked the least number of overtime hours to date. The custodian would summon employees from the "off" crew only if the "on" crew could not provide sufficient manpower.

The custodian would attempt to call each employee three times at five-minute intervals. If the employee answered the call, the custodian would ask the employee to leave for work immediately. If an employee failed [**4] to answer by the third attempt or refused to report, the custodian would call the next name on the roster.

[*608] Employees could take certain steps to reduce the chances of missing a call for emergency work. First, an employee could call the Turnpike collect and leave a number where he or she could be reached. Second, if someone remained at the employee's home, the employee could tell that person how to contact him or her in the event of an emergency. Third, an employee could call the foreman and ask whether he or she was likely to be needed for emergency work that night. Fourth, an employee could consult the overtime roster and the "on" and "off" rotation schedule to determine whether he or she would be among the first to be called in the event of an emergency. Fifth, the employee could carry an electronic pager. [2]

[**5] If an employee was in the "on" crew and failed to answer a call or refused to report, he or she would be subject to discipline. The Turnpike did not take disciplinary action against any employees in the "off" crew who failed to answer a call. Two instances of discipline within one year would result in a written reprimand. The third and fourth occurrences would lead to suspensions, and a fifth would result in termination.

From 1986 to 1989, the Turnpike took disciplinary action 69 times but apparently did not terminate any employees under the policy.

When an employee performed unscheduled overtime work, he or she received overtime compensation for travel time to and from the Turnpike as well as for the time actually worked. The Turnpike did not compensate employees, however, for time spent "on call" away from the Turnpike.

Fourteen of the plaintiffs filed this action in June 1987 for overtime compensation for time spent on call. The district court ordered the plaintiffs to issue a "opt-in" notice, pursuant to 29 U.S.C. § 216(b), to notify other Turnpike employees of the action. Over 100 employees responded to the notice, and an amended complaint was filed to add the new plaintiffs. [**6] In August 1988, the plaintiffs filed a second amended complaint, adding a claim for compensation for time spent on call during lunch breaks taken on the Turnpike's property (the "lunch period" claim).

Five months later, the Turnpike moved for partial summary judgment against the plaintiffs' first claim. The Turnpike filed a notice in May 1989 limiting the summary judgment motion to the period before March 11, 1989, the date a new collective bargaining agreement went into effect.

The district court granted the Turnpike's motion for partial summary judgment in September 1990. In March 1991, the plaintiffs moved for reconsideration and for a clarification of whether the partial summary judgment order was limited to the period before March 11, 1989. The court denied the plaintiffs' motions for reconsideration and clarification and explained that it had granted summary judgment against the first count "in its entirety."

In August 1991, the plaintiffs voluntarily dismissed the "lunch period" claim. The district court then entered an order certifying the grant of partial summary judgment as a final order. This appeal followed. [3]

[**7] II.

---

[1] During the winter, the two crews alternated every 12 hours during a storm. During the summer, a crew was "on" for two weeks and "off" two weeks.

[2] The parties disagree as to whether some of these measures were effective. The plaintiffs point out that employees acted at their peril if they concluded that they would not he called based on the overtime roster or on a foreman's prediction. The plaintiffs also maintain that the Turnpike actively discouraged the use of pagers.

[3] The plaintiffs filed two notices of appeal. The first appealed from the order granting partial summary judgment ad the orders denying the motions to reconsider and clarify. The second notice appealed from those three orders and the order certifying the partial summary judgment as a final order. We consolidated the plaintiffs' two appeals.

968 F.2d 606, *608; 1992 U.S. App. LEXIS 15356, **7

Summary judgment is appropriate if, after an opportunity for discovery, the moving party demonstrates that there is no genuine issue of material fact as to the existence of an element essential to the non-moving party's case and on which the non-moving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once the moving party carries its initial burden of showing that no genuine issues of material fact are in dispute, the burden shifts to the non-moving [*609] party to come forward with specific facts to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.* When determining whether there is a genuine issue of material fact, a court [**8] must view the evidence in the light most favorable to the non-moving party. *Id.* at 255. We review the district court's grant of summary judgment *de novo. EEOC v. University of Detroit,* 904 F.2d 331, 334 (6th Cir. 1990).

A.

We begin our analysis by examining the law applicable to the plaintiffs' claim. The Fair Labor Standards Act (FLSA) provides that employees must be compensated at one and one-half times their regular rate for overtime work. 29 U.S.C. § 207(a). Although the FLSA does not state whether time spent on call is working time, the Supreme Court has held that, under some circumstances, waiting time is compensable. *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 89 L. Ed. 118, 65 S. Ct. 165 (1944); *Skidmore v. Swift & Co.,* 323 U.S. 134, 136, 89 L. Ed. 124, 65 S. Ct. 161 (1944).

In both *Armour* and *Skidmore,* the plaintiffs were private firefighters hired to work at the defendants' factories. In both cases, the plaintiffs worked regular hours, but were required to spend approximately half of their "time off" in the company dormitories so that they could respond quickly to alarms. In *Armour,* the Seventh Circuit had upheld a finding in favor [**9] of the firefighters, but in *Skidmore* the district court and the Fifth Circuit had held that waiting time was not compensable.

The Court declined to issue a firm rule as to whether on-call time is working time. Instead, the Court held that the result turns on whether an employee's time "is spent predominantly for the employer's benefit or for the employee's," a question "dependent upon all the circumstances of the case." *Armour,* 323 U.S. at 133; see also *Skidmore,* 323 U.S. at 136-37. The Court affirmed the judgment for the firefighters in *Armour* and reversed and remanded in *Skidmore* for a determination as to whether, considering the facts in that case, the firefighters' waiting time was compensable.

Although the employers' requirement that the employees spend their "time off" in the employers dormitories was an important factor in both *Armour* and *Skidmore,* the Court did not limit its holding to waiting time spent on company premises. Therefore, an employee may be entitled to compensation even though he or she is on call at home or elsewhere. [4] Although we have not decided such a case before today, at least three other circuits [**10] have considered claims for compensation for time spent on call while away from the employer's premises. Since the Court emphasized in *Skidmore* and *Armour* that the outcome in each case depends on the specific circumstances, we shall examine the facts in these other cases in some detail.

[**11] The Turnpike relies on several cases in which the Fifth Circuit has rejected employees' claims for off-premises, on-call overtime. In *Bright v. Houston Northwest Medical Center Survivor, Inc.,* 934 F.2d 671 (5th Cir. 1991), *cert. denied,* 116 L. Ed. 2d 786, __ U.S.__, 112 S. Ct. 882 [*610] (1992), the Fifth Circuit, sitting *en banc,* affirmed a grant of summary judgment against a biomedical repair technician who was on call 24 hours a day, 365 days a year. While off duty, his employer required him to remain sober, carry a pager at all times, and be able to arrive at work within approximately 20 minutes. The employer paged him an average of four to five times a week. The court

---

[4] Conversely, an employee may not be entitled to compensation even though the employer does require the employee to wait on company premises. *See, e.g., Kelly v. Hines-Rinaldi Funeral Home,* 847 F.2d 147, 148 (4th Cir. 1988) (affirming summary judgment against housekeeper's claim for compensation for nights primarily spent sleeping in apartment inside funeral home), *cert. denied,* 493 U.S. 835, 107 L. Ed. 2d 74, 110 S. Ct. 112 (1989); *Rousseau v. Teledyne Movible Offshore, Inc.,* 805 F.2d 1245, 1248-49 (5th Cir. 1986) (affirming dismissal of offshore oil workers' claim for compensation for time primarily spent sleeping and relaxing on employer's barge), *cert. denied,* 484 U.S. 827, 98 L. Ed. 2d 56, 108 S. Ct. 95 (1987).

concluded that, although these conditions were oppressive, the fact that the technician could use the time for his own pursuits so long as he stayed near the hospital precluded compensation under the FLSA. *Bright,* 934 F.2d at 678-79.

Similarly, in *Halferty v. Pulse Drug Co.,* 864 F.2d 1185 (5th Cir. 1989), the court reversed a judgment obtained by an ambulance dispatcher who was required to remain at home to answer calls from 5:00 p.m. to 8:00 [**12] a.m. The court held that she was not entitled to compensation because she was free to "visit friends, entertain guests, sleep, watch television, do laundry, and babysit." *Id.* at 1189. The Fifth Circuit also reversed a judgment in favor of on-call employees in *Brock v. El Paso Natural Gas Co.,* 826 F.2d 369 (5th Cir. 1987). The employees in that case rotated the duty to stay home and answer alarm calls from the employer's pumping station. The court, noting that the alarms were infrequent, concluded that the employees were "relatively free to use on-call time however they desire." *Id.* at 373.

The plaintiffs in this case concede that their claim would not succeed in the Fifth Circuit. They maintain, however, that the Fifth Circuit has adopted a overly restrictive view of on-call compensation.

The plaintiffs contend that their claim would succeed under the approach taken by the Eighth and Tenth Circuits. In *Cross v. Arkansas Forestry Commission,* 938 F.2d 912 (8th Cir. 1991), the employer required its employees to monitor hand-held radios 24 hours a day during on-call periods and respond immediately to emergencies. [**13] The court found that this requirement restricted the employees' travel, prevented them from participating in activities that would prevent them from hearing the radio, forced them to concentrate on the radio at all hours, and prevented them from going places, such as theaters, where radio noise is unwelcome. *Id.* at 916-17. Accordingly, the court reversed the district court's grant of summary judgment against the employees' claim for compensation and remanded the case for trial.

The Tenth Circuit affirmed a grant of summary judgment in favor of a employees' claim for compensation for on-call time in *Renfro v. City of Emporia,* 948 F.2d 1529 (10th Cir. 1991), *cert. dismissed,* __ U.S. __, 112 S. Ct. 1310, 117 L. Ed. 2d 510 (1992). In *Renfro,* the plaintiff firefighters were on call for 24-hour periods, during which they were required to carry pagers and return to work within 20 minutes when called. The court, placing heavy emphasis on the undisputed fact that the employer called back each firefighter a average of three to five times per 24-hour period, concluded that the firefighters could not use the time effectively for personal [**14] pursuits. *Renfro,* 948 F.2d at 1535.

The *Renfro* court distinguished two earlier Tenth Circuit In *Boehm v. Kansas City Power and Light Co.,* 868 F.2d 1182 (10th Cir. 1989), the court held that the trial court should have directed a verdict against the plaintiff linemen's claim for one compensation. The policy challenged in *Boehm* required the linemen to respond to one-third of callback requests and allowed the linemen to carry pagers or leave alternative telephone numbers. In *Norton v. Worthen Van Service, Inc.,* 839 F.2d 653 (10th Cir. 1988), the employer required van drivers to answer calls to transport railroad crews. The court affirmed the district court's dismissal of the drivers' claim for on-call compensation, finding that the drivers were free to pursue personal pursuits and use a pager if they needed to be away from a telephone. *Id.* at 655-56.

The plaintiffs also point to the unpublished decision in *Owens v. ITT Rayonier,* No. C88-533T, 1990 U.S. Dist. LEXIS 18715 (W.D. Wash. Sept. 26, 1990), *appeal docketed,* No. 91-35409 (9th Cir. 1991). In *Owens,* the court entered judgment against a pulp mill that promulgated [**15] a policy that imposed discipline against any mechanic who missed an unspecified number of call-in attempts. The court concluded that the mechanics' [*611] obligation to respond to pages prevented them from using the time for their own purposes. As the Turnpike points out, the *Owens* decision cites no cases and contains no legal analysis to support its decision.

Finally, the Department of Labor, the executive department charged with administering the FLSA, has promulgated regulations concerning the compensability of on-call periods. The regulations provide:

An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may he reached is not working while on call. Time spent at home on call may or may not he compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the

conditions [**16] placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 C.F.R. § 553.221(d); see also 29 C.F.R. § 785.17 (containing virtually identical language). The Department of Labor's interpretation of the FLSA is entitled to deference. Skidmore, 323 U.S. at 139-40.

From our survey of the law in this area, we conclude that on-call time spent at home may he compensable if the restrictions imposed are so onerous as to prevent employees from effectively using the time for personal pursuits. The mere fact that a employer requires employees to leave word where they can he reached will not be sufficient to make the on-call time compensable. Instead, the employees must show that the on-call policy imposes additional burdens that seriously interfere with their ability to use the time for personal pursuits.

For example, the employees may be able to show, like the employees in Renfro, that the employer calls them back so frequently as to make effective use of the time impractical. Alternatively, the employees could show, like the plaintiffs in Cross, [**17] that the employer's on-call system is so distracting or cumbersome as to seriously inhibit personal activities. We do not hold that these two examples are the only ways that employees could meet their burden, but we do find them to be representative of the type of showing that a employee must make to survive a motion for summary judgment.

## B.

We now must determine whether the plaintiffs' evidence in the instant case is sufficient to survive summary judgment. The plaintiffs contend that the district court erred by resolving disputed issues of fact in favor of the Turnpike. Specifically, the plaintiffs argue that the district court erroneously concluded that the on-call policy has not changed the plaintiffs' lifestyles.

We agree that the plaintiffs' affidavits and depositions are sufficient to establish a issue as to whether the on-call policy has changed the plaintiffs' use of their free time. Viewing that evidence in the light most favorable to the plaintiffs, a reasonable juror could find that many of the plaintiffs have given up or curtailed certain activities for fear of missing a emergency call.

However, we find that the plaintiffs' evidence does not establish a genuine [**18] issue of material fact. The fact that some of the plaintiffs' activities have been affected by the policy is not sufficient to make the on-call lime compensable. The plaintiffs must show that the policy is so onerous as to prevent them from effectively using their free time for personal pursuits. That some of the plaintiffs' personal activities may be affected is not enough. The plaintiffs must establish the type of severe restrictions at issue in Cross and Renfro.

The plaintiffs have not provided any evidence to show how frequently they are called back. Without such evidence, a jury could not find that they are called back so frequently as to make effective use of their time impractical. The plaintiffs also have [*612] not established that the Turnpike's on-call system is unusually onerous. Unlike the employees in Cross, the plaintiffs need not listen to a radio all night. They need only respond to a telephone call or pager. If they need to leave home, they can call the Turnpike and give a number where they can be reached. Unlike the employers in Cross, Renfro, Bright, and several of the other on-call cases, the Turnpike does not require its employees to arrive within [**19] a certain time after being called.[5] Thus, the plaintiffs' travel is not severely restricted.

The plaintiffs argue that several facts in the record establish that the Turnpike's policy is unreasonable. For example, the plaintiffs point to the testimony of a Turnpike official, who stated that, due to the possibility of malfunction, employees used pagers at their own risk. That official also testified that the Turnpike may not have allowed a employee to leave more than one alternate phone number where he or she could be reached.

This evidence does not establish that the Turnpike's on-call policy was especially burdensome. The fact that employees bore the risk of using pagers does not amount to an interference with the employees' ability to use [**20] their free time. Similarly, the restriction on the number of alternate phone numbers merely requires an employee to call in each time he or she changes location.

Finally, although the plaintiffs stated in their affidavits and depositions that they have given up certain

---

[5] If the custodian calls a employee and learns that he or she is too distant to arrive in time to help with the emergency, the custodian will call another employee. There is no indication in the record that the Turnpike would discipline the first worker in that situation.

Zeth Hearld

activities, we note that may of them admitted that they still participate in numerous activities. Those admissions would preclude a finding that the plaintiffs are unable to use their time for their own pursuits. We therefore find that summary judgment against the plaintiffs' claim is appropriate.

C.

Finally, we must consider whether the district court properly granted summary judgment against the plaintiffs' claim in its entirety. The Turnpike had limited its motion for summary judgment to the period before March 11, 1989, the date a new collective bargaining agreement went into effect. The new agreement changed some of the features of the on-call policy.

At oral argument, the Turnpike conceded that the grant of summary judgment coveted only the period before March 11, 1989. Accordingly, the portion of the plaintiffs' claim pertaining to the period after that date is **REMANDED** to the district court for further [**21] proceedings.

In all other respects, the judgment of the district court is **AFFIRMED.**

---

End of Document

Zeth Hearld