UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sheila Bulter,

    Plaintiff,

v.                                                      Case No. 16-14071

Ciena Health Care Mgt., Inc.,                           Sean F. Cox
                                                        United States District Court Judge
    Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this Fair Labor Standards Act case, Plaintiff claims that Defendants should have compensated her for overtime and for time spent on-call. Discovery has concluded and Defendants have moved for summary judgment. Because the issues have been adequately presented in the parties' briefs and oral argument would not significantly aid the decisional process, the Court will decided Defendants' motion on the briefs. E.D. Mich. LR 7.1(f)(2).

For the reasons below, the Court shall grant the motion in part and deny it in part. The Court concludes that Defendants are not entitled to summary judgment in its favor on Plaintiff's overtime claim because, construing the evidence in the light most favorable to Plaintiff, there are genuine issues of material fact for trial. But the Court shall grant Defendants' motion as to Plaintiff's on-call time claim because a reasonable jury could not conclude that Defendants' on-call policy seriously interfered with Plaintiff's ability to use her time for personal pursuits.

### BACKGROUND

In January 2015, Defendant Hartford Nursing & Rehabilitation Center offered Plaintiff

1

Sheila Butler a position as a Director of Admissions and Marketing.[1]  Def. Ex. B.  The job offer described the position as a full time, salaried-exempt position.  *Id*.  At the time, Defendant also employed a second Director of Admissions, Jessica Fairweather.  Fairweather Dep., p. 12.  Plaintiff worked at Defendant Hartford in this capacity until February 2017.  Pl. Dep., p. 95.

At Hartford, the Director of Admissions is responsible for patient referrals and for admissions department activities.  Def. Ex. D.  The latter responsibility includes identifying, soliciting, and maintaining relationships with referral sources, such as hospitals and assisted living facilities.  *Id*.  For example, Plaintiff would contact physicians and social workers, accompany doctors at hospitals as they visited patients, and conduct tours of Hartford's facility.  Pl. Dep., p. 48-49, 65.  The Director is also responsible for submitting daily and monthly reports about admissions, discharges, and current patient insurance information.  Pl. Dep., p. 44-45; Toth Dep., p. 34-35.  This information would also be reported in daily calls or morning meetings with supervisors.  Pl. Dep., p. 46-47; Fairweather Dep., p. 20.

The Director's primary responsibility, however, appears to be admitting patients who have been referred from other facilities.  Hartford receives patient referrals from other healthcare facilities either via a computer program called "ECIN" or via fax.  Def. Stmt. of Undisputed Facts, ¶ 9.  According to Plaintiff, when Hartford received a referral during work hours, she would view it, identify the patient's insurance, and contact the insurer to obtain any necessary authorization.  Pl. Dep., p. 37-38.  Plaintiff would also fill out a form, developed by Defendants, identifying the patient's medical conditions.  *Id*. at 39-40; Def. Ex. P.  This "Admission

---

[1] Defendant Ciena Health Care Management, Inc. Provides management services to Defendant Hartford.  Def. Ex. A.

Screening Tool" contains explicit admissions instructions for the Director. It specifies that patients who have certain stabilized medical conditions should be automatically approved. Def. Ex. P. Referrals for patients who have certain other specified medical conditions or treatments must be reviewed by a licensed nurse and/or therapist. *Id*.

As the Director of Admissions, Plaintiff could admit patients if their insurance was appropriate and if the Director of Nursing approved. Pl. Dep., p. 37. Plaintiff could not deny a referral without alerting corporate. *Id*. at 41; Fairweather Dep., p. 17.

Plaintiff was responsible for admitting patients twenty-four hours a day, seven days a week. Def. Ex. D; Pl. Dep., p. 36. She was expected to respond to at least 65 percent of referrals within 15 minutes. Toth Dep., p 20. The Directors of Admissions were on call for 24 hours a day on weekdays. *Id*. at 126; Fairweather Dep., p. 16. Plaintiff was also on call every other weekend, alternating with Fairweather. Pl. Dep., p. 104.

Hartford received after hours referrals via ECIN or fax. Pl. Dep., p. 107. Referrals via ECIN were also sent directly to the Director's phone whereas faxes went to Hartford's facility. Toth Dep., p. 53. Plaintiff could respond to ECIN referrals using her phone, *id*. at 43, but she did not receive faxed referrals until she returned to work. Toth Dep., p. 54. Over a two year period while Plaintiff was employed (from February 1, 2015 through February 28, 2017), there were 5,878 referrals made via ECIN. Def. Ex. Q. All but 178 of these referrals were made between the hours of 8:00 a.m. and 5:00 p.m. Def. Ex. R. Only 323 of the total ECIN referrals were made on Saturday or Sunday. Def. Ex. Q.

After Plaintiff left her position, she sued Defendants, arguing that her job responsibilities entitled her to compensation for overtime hours worked and time spent on-call and that

Defendants' failure to provide this compensation violated the FLSA. Following discovery, Defendants moved for summary judgment (Doc. # 38) and Plaintiff responded (Doc. # 40).

## STANDARD OF DECISION

Summary judgment will be granted when no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

Plaintiff brings two claims under the FLSA. First, she argues that Defendants failed to pay her overtime pay for all hours worked over 40 in a work week. Second, she argues that she is entitled to compensation for the time she spent on-call.

### I. Whether Plaintiff is Entitled to Overtime Pay

The FLSA "requires overtime pay for each hour worked in excess of forty hours per week," but exempts employees employed in a bona fide administrative capacity. *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 642 (6th Cir. 2013), citing 29 U.S.C. § 213(a)(1). An employee working in a "bona fide administrative capacity" is someone:

(1) Compensated . . . at a rate of not less than $455 per week . . .;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). "An employee who satisfies all three elements falls within this 'administrative exemption.'" *Lutz v. Huntington Bancshares, Inc.*, 815 F.3d 988, 992 (6th Cir. 2016). This exemption is narrowly construed against the employer, and the employer must prove each element by a preponderance of the evidence. *Foster*, 710 F.3d at 642.

The parties do not dispute that the first two elements are met here. Plaintiff also does not argue that her duties did not involve "matters of significance." *See Perry v. Randstad Gen. Partner (US) LLC*, __ F.3d __; 2017 WL 5560160, p. 3 (6th Cir. 2017). Thus, the only issue is whether Plaintiff's primary duty included "the exercise of discretion and independent judgment."

"In general, the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Employees can exercise such discretion even if their decisions are reviewed at a higher level. 29 C.F.R. § 541.202(c). But the exercise of discretion and independent judgment requires "more than the use of skill in applying well-established techniques, procedures, or specific standards in manuals or other sources." 29 C.F.R. § 541.202(e).

Plaintiff's reliance on the Admissions Screening Tool to evaluate referrals militates against the conclusion that she exercised independent judgment. This tool, which Defendants created and require Plaintiff to use, dictates admissions decisions based on patients' medical conditions or required treatments. For patients that have certain stabilized medical conditions, the form all but precludes the exercise of any discretion, instructing that "there should be an automatic approval" by the Director. Def. Ex. P. If the Director has any doubts, the form instructs the Director to contact the Director of Nursing, who Plaintiff testified made the final

admissions decisions. The form also requires review by a licensed nurse and/or therapist for any patient that has certain specified medical conditions or treatments, such as patients weighing more than 350 pounds or those receiving chemotherapy. *Id*.

Additionally, Plaintiff's description of her responsibilities indicates that she merely prepared the documentation that her superiors would use to make a final admissions decision. Plaintiff did not create admissions policies, she followed the policies that Defendants established. She would only admit a patient if the Director of Nursing first approved the decision. Plaintiff also lacked the authority to deny patients. Denials, whether made for clinical or financial reasons, were made by Plaintiff's superiors. Although employees can exercise discretion and independent judgment even if their decisions are reviewed at a higher level, 29 C.F.R. § 541.202(c), the degree of supervision here suggests that Plaintiff lacked the "authority to make an independent choice" about whether to admit or deny a patient. *See id*.

Viewed in the light most favorable to Plaintiff, the Admission Screening Tool's review requirements, coupled with Plaintiff's testimony, create an issue of material fact regarding whether Plaintiff exercised independent judgment when admitting patients. This evidence suggests that she was not required to use her "own skill, experience, judgment, and discretion." *See Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512, 519 (6th Cir. 2004). Instead, admissions decisions were dictated by the screening tool.[2] Any judgment calls, and the ultimate

---

[2] Although Plaintiff was required to identify a patient's medical conditions, there is no indication that she exercised independent judgment when doing so. The Director of Admissions is not required to have any clinical training or experience. And Plaintiff testified that any questions or decisions about clinical matters were directed to the Director of Nursing or her supervisors. Plaintiff's obligation to identify pre-diagnosed medical conditions is more akin to recording data than the exercise of discretion and independent judgment. *See* 29 C.F.R. § 541.202(e) ("The exercise of discretion and independent judgment also does not include . . .

6

decision to admit or deny a patient, were resolved by Plaintiff's superiors. And Plaintiff testified that she did not have the authority to depart from the result mandated by the screening tool or selected by her superiors. *Cf. Lutz*, 815 F.3d at 997 (holding the administrative exemption applied where the plaintiffs could exercise discretion to depart from company guidelines).

Defendants dispute the veracity of Plaintiff's testimony, asserting that the Director actually operates with wide discretion when making admissions decisions. Defendants also contend that Plaintiff was expected to develop strategies for marketing and increasing census for the facility, which were then shared during staff meetings. But, as indicated above, Plaintiff has presented conflicting evidence that creates questions of fact. Defendants' arguments encourage the Court to weigh the evidence and make credibility decisions, which the Court cannot do at the summary judgment stage. *Anderson*, 477 U.S. at 255. And when there are material questions of fact concerning whether Plaintiff's work involved discretion and independent judgment, the Court cannot make this determination as a matter of law. *Foster*, 710 F.3d at 649.

Finally, Defendants briefly refer to Plaintiff's responsibility to build relationships with discharge planners. But even assuming that this responsibility requires the exercise of discretion and independent judgment, Defendants' cursory reference, without more, does not satisfy their burden to show that maintaining relationships with discharge planners was Plaintiff's primary duty. 29 C.F.R. § 541.202(a) ("To qualify for the administrative exemption, an employee's *primary duty* must include the exercise of discretion and independent judgment . . .") (emphasis added); *see also Perry*, __ F.3d at __, p. 14 (considering whether the exempt tasks in question were the plaintiffs' primary duties).

---

recording or tabulating data . . . .").

In sum, questions of material fact exist regarding whether Plaintiff's primary duty involved the exercise of discretion and independent judgment. Because Defendants have not met their burden to show that Plaintiff qualifies for the administrative exemption, the Court will deny their motion for summary judgment on this claim.

### II. Whether Plaintiff is Entitled to be Paid for All Time Spent On-Call

Defendants also seek summary judgment on Plaintiff's claim that she is entitled to be paid for all of the hours she spent on-call. Waiting time while on-call, in some circumstances, is compensable. *Martin v. Ohio Turnpike Comm'n.*, 968 F.2d 606, 609 (6th Cir. 1992). "[O]n-call time spent at home may be compensable if the restrictions imposed are so onerous as to prevent employees from effectively using the time for personal pursuits." *Id*. at 611. "[T]he employees must show that the on-call policy imposes additional burdens that seriously interfere with their ability to use the time for personal pursuits." *Id*.; *see also* 29 C.F.R. § 553.221(d).

Plaintiff argues that Defendants' on-call requirements severely restricted her personal activities and her ability to use her time for her own purposes. Plaintiff testified that she refrained from drinking when she was on-call, stopped doing hobbies like embroidery and crafts, did not join a bowling league, and stopped attending some business development classes at Schoolcraft College.

A 24/7 on-call policy will unquestionably interfere, to some degree, with an employee's use of her free time. Plaintiff's testimony demonstrates as much. But the mere existence of such a policy is insufficient to entitle Plaintiff to relief under the FLSA. To establish a genuine issue of material fact, Plaintiff must show that Defendants' policy was "so onerous" as to prevent her from effectively using her free time for personal pursuits. *Martin*, 968 F.2d at 611. Plaintiff has

8

not made that showing here.

Plaintiff has not provided any evidence to show how frequently she received referrals while on-call. And the documentary evidence belies the suggestion that she received referrals so frequently that she was unable to effectively use her own time. In two years, out of the thousands of ECIN referrals that Defendants received, only 323 were made on the weekends and only 178 were made outside of working hours. Because Plaintiff shared responsibilities with another Director of Admissions, it is reasonable to assume that she was only responsible for responding to about half of these referrals. Absent evidence that Plaintiff was called back far more often, a reasonable jury could not find that Plaintiff had to respond to referrals so frequently as to make effective use of her time impractical. *Id*.; *see also Adair v. Charter County of Wayne*, 452 F.3d 482, 488 (6th Cir. 2006) ("Plaintiffs failed to demonstrate that they received so many calls that they could not effectively use their off-duty time.").

Further, Plaintiff has not shown that Defendants' on-call policy is otherwise "unusually onerous." *Martin*, 968 F.2d at 612. Like the plaintiffs in *Martin*, Plaintiff was free to use her time as she wished and was only required to respond when a referral came in. *Id*. Because she could respond to referrals from her phone, her travel was not severely restricted. *Id*. And although Plaintiff testified that her on-call responsibilities affected her personal activities, these self-imposed burdens are insufficient to prevent summary judgment. *See id*. at 11 (holding the plaintiffs' could not survive summary judgment even where "a reasonable juror could find that many of the plaintiffs have given up or curtailed certain activities for fear of missing an emergency call."). A reasonable jury could not find that Defendants' *on-call policy itself*, and its resulting obligations, were so onerous as to prevent the effective use of Plaintiff's time.

Therefore, the Court shall grant Defendants' motion for summary judgment on this issue.

## CONCLUSION

For the reasons above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The Court GRANTS Defendants' motion as to Plaintiff's on-call time claim but DENIES Defendants' motion as to Plaintiff's overtime claim. Accordingly, the overtime claim shall proceed to trial.

IT IS SO ORDERED.

                                                                         s/Sean F. Cox
                                                                         Sean F. Cox
                                                                         United States District Judge

Dated: December 27, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 27, 2017, by electronic and/or ordinary mail.

                                                                        s/Jennifer McCoy
                                                                        Case Manager